CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
MAR 11 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LAURA WASMER,<br>          *Plaintiff,*<br><br>v.<br><br>THE KROGER CO., and KROGER LIMITED PARTNERSHIP I,<br>          *Defendants.* | CASE NO. 6:10-cv-00038<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendants' Motion for Summary Judgment (docket no. 53), filed on February 3, 2011. The parties' arguments have been fully briefed and heard, and for the reasons stated in this memorandum, I will grant Defendants' motion.

I. BACKGROUND

Plaintiff Laura Wasmer ("Plaintiff" or "Wasmer") is suing in negligence Kroger Limited Partnership I and its parent corporation The Kroger Company (collectively "Defendants" or "Kroger") for $950,000 for "serious and permanent physical and psychological injuries." (Pl.'s Compl. ¶ 8.) Plaintiff alleges that the injuries are a result of an accident that occurred on November 8, 2008 outside the Kroger grocery store located at 7805 Timberlake Road, Lynchburg, Virginia in the Brookville Plaza Shopping Center.

The Kroger store was one of several businesses occupying building space in an open-air shopping center owned by Regency Centers, L.P. Kroger leased the interior building premises from Regency Centers. Regency Centers retained ownership of the common area, which was the portion of the shopping center not occupied by building area, such as the parking lot and driving lanes. Pursuant to the lease, Regency Centers "shall keep and maintain the Common Area in

good repair, including without limitation, keeping the same free of trash, debris, snow or ice as well as properly lighted, striped and surfaced, including subsurface." Kroger was granted a "non-exclusive easement" over the common area "for parking and unobstructed vehicular and pedestrian passage by [Kroger] and its employees, agents, contractors, invitees and licensees." The accident occurred in the traffic lane that parallels the front of Kroger and permits ingress and egress to the parking area and public street. The lane is used by shoppers to all stores in the shopping center.

On the day of the accident, Wasmer parked in the shopping center parking lot, and shopped in the Kroger store. She placed her grocery items in a two-tiered "basket" shopping cart provided by Kroger (also referred to in the record as a "mini stacked cart" or a "bascart"). After shopping, she exited the store and crossed the asphalt driving lane in front of the store and turned parallel to the island of curbing opposite the store in order to maneuver to the aisle of the parking lot in which her car was parked. As she was pushing her cart on the asphalt travel lane, parallel to the curb, a car approached, and she moved her cart over towards the curb to allow more room for the car to pass. It was at this point that Wasmer reports her cart "came to a complete stop and it jolted," causing the cart to flip over and Wasmer to fall to the ground. (Wasmer Dep. 65:22-66:5, Dec. 7, 2010.)

Wasmer alleges that the front wheel of the cart struck a surface defect in the seam between the asphalt of the lane and the concrete of the "curb collar," which is the portion of curbing that extends horizontally from the curb.[1] At that seam, it is undisputed that there was a height differential between the curb collar and the asphalt of no more than one-quarter inch. Wasmer did not actually see the wheel of the cart strike the lip of the curb collar, only that

---

[1] At oral argument, Plaintiff also stated that there was "some erosion" of the asphalt surface in the area where she fell.

"while going to the left the cart hit something, I didn't know what it was." (*Id.* 65:23-66:1.) She did not see the alleged collision in part because she was watching oncoming traffic and, as Wasmer observed, "you can't see a portion in front of you because of the cart." (*Id.* 63:6-12.) She did not realize what had caused the cart to stop until she got up from her fall and noticed the lip between the curb collar and the asphalt. There were no witnesses to the accident.

Defendants deny that the accident occurred as Wasmer alleges. They suggest that the wheel of the cart could have locked up, the cart could have struck the vertical portion of the curb, or Wasmer could have tripped and fallen on her own account, due to side effects of medications she had taken in the previous twenty-four hours.

Thomas Shifflet, the Kroger store manager, testified that each workday, he would walk through and inspect the parking lot area outside the Kroger store. (Shifflet Dep. 33:14-24, Dec. 7, 2010.) He stated that five to six months prior to the incident, he made four or more complaints to the Kroger real estate department about "conditions of the parking lot and the curbing." (*Id.* 26:21-28:6.) He understood that the real estate department notified Regency Centers of those complaints. (*Id.* 27:10-17, 28:15-29:5.) Shifflet testified that within two months of the Wasmer incident, a different woman hit the curb with her two-tiered shopping cart in the vicinity of the area where Wasmer fell, on the same side of the same parking lot island, and the woman fell over the cart. After that incident, Regency Centers made repairs to the surfacing of the shared driving lane and parking lot area. (*Id.* 28:22-29:9.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be

"'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Once a motion for summary judgment is properly made and supported, the non-moving party may not rely merely on allegations or denials in its own pleading, rather it must set out "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Defendants move for summary judgment, so the Court must view the facts in the light most favorable to Plaintiff.

### III. DISCUSSION

To establish negligence under Virginia law, a plaintiff must show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). "[A]n owner or occupier of real property owes to an invitee the duty to exercise reasonable care to make the premises safe" but "is not an *insurer* of the safety of the premises." *Gauldin v. Va. Winn-Dixie, Inc.*, 370

F.2d 167, 169 (4th Cir. 1966). To fulfill its duty, the owner or occupant is "required to have the premises in a reasonably safe condition" and to warn the customer of any defect or unsafe condition that the owner or occupant knew about or should have known about given the length of time it existed. *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962); *see also Gall v. Great Atl. & Pac. Tea Co.*, 202 Va. 835, 837, 120 S.E.2d 378, 380 (1961) (stating that such duty requires a business to "warn persons invited to use its premises of dangers which are known to it and unknown to the invitee").

Plaintiff alleges two separate grounds for finding negligence. First, Plaintiff claims that the condition of the lip at the seam between the curb collar and the asphalt of the traffic lane in front of the Kroger store posed a danger to shoppers pushing carts containing groceries to their parked cars. Defendants argue that they are entitled to judgment as a matter of law on this ground for the following reasons: Kroger owed no duty to Wasmer because it did not own or maintain the travel lane or parking lot area; the evidence does not establish that the one-quarter-inch lip was a defect or dangerous condition; the condition, if determined to be unsafe, was open and obvious; and the evidence is insufficient to show that the alleged defect was the proximate cause of Wasmer's injuries.

Second, Plaintiff alleges that the two-tiered cart used by Wasmer was unsafe and not fit for use on uneven surfaces because it was top-heavy when filled with groceries and thus prone to topple. Defendants respond that Plaintiff has provided no evidence that the cart was unsafe. I will address, in turn, each of the grounds for finding negligence raised by Plaintiff.

### A.

As a matter of law, Plaintiff cannot make out a *prima facie* case of negligence based on the height differential between the asphalt and the curb collar because Kroger owed no duty to

exercise ordinary care to maintain the common lane or parking lot area in a reasonably safe condition for persons visiting the shopping center or to warn of hazards in the common area. Only "an owner or occupier of real property" owes such a duty, *Gauldin v. Va. Winn-Dixie*, 370 F.2d at 169, unless a business assumes the duty to keep the area of common use in a reasonably safe condition, *Kings Mkts., Inc. v. Yeatts*, 226 Va. 174, 182-83, 307 S.E.2d 249, 254-55 (1983). Kroger was the lessee of the building premises, not of the common area of the shopping center, where the accident occurred. The lease specifically states that Regency Centers, the owner of the shopping center, had the contractual duty to keep the common area "in good repair, including . . . keeping the same . . . properly lighted, striped *and surfaced, including subsurface*." (Emphasis added.)

Plaintiff argues that even if the lease did not assign Kroger the duty to maintain the surfacing of the common area driving lanes and parking lot or warn of dangerous conditions related thereto, it assumed that duty when it undertook to install landscaping and stalls for returning grocery carts in the portion of the parking lot near the Kroger store. Moreover, Plaintiff contends that Kroger store manager Shifflett's routine inspections of the condition of the common area, and the complaints he made about the parking lot and the curbing, show that Kroger assumed the duty of keeping the parking lot and curbing in good repair.

*Kings Markets* also involved a grocery store that leased building premises from an owner of a shopping center. 226 Va. at 183, 307 S.E.2d at 254. Under the terms of the lease in that case, the owner had the duty to maintain the parking area in a safe condition and remove any accumulations of snow or ice. *Id.* A grocery store shopper sued Kings Markets after slipping on snow and ice that had accumulated on the curbing in the parking lot area in front of the store. *Id.* at 175, 307 S.E.2d at 250. Although Kings Markets did not own, occupy, or have a contractual

duty to maintain the common parking lot area, the court upheld the jury's finding that Kings Markets assumed the duty of keeping the parking lot free of hazards from snow and ice. *Id.* at 182-83, 307 S.E.2d at 254-55. The court observed that there were ample grounds for the jury's finding, given that Kings Markets had hired someone to clear the snow and ice from the parking lot, and then sent a letter to the owner of the shopping center stating that in the future, the owner would be responsible for snow removal. *Id.*

The defendant in *Kings Markets* hired someone to remove snow and ice from the parking lot area, whereas here, Kroger did not hire another party to resurface the curbing and asphalt, and Kroger did not attempt to repair the surface itself. To the contrary, Kroger's actions were entirely consistent with its contractual arrangement with Regency Centers. Its manager Shifflet inspected the common area and notified Regency Centers (through the Kroger real estate department) of areas of concern and in possible need of repair. Sometime after Wasmer's accident, Regency Centers had the lip between the asphalt and the curb collar repaired. Kroger did not undertake to make the repairs itself. The lease entitles Kroger "to use the sidewalks and parking areas abutting the [leased building area] for the storage of bascarts," so the fact that stalls for storing grocery carts were added to the parking lot area is of no consequence.

Plaintiff asserted in oral argument that Kroger installed landscaping in the parking lot, but the only evidence of that in the record is found in Wasmer's deposition testimony, in which she stated that "[t]hey had done some landscaping and such" in response to the question whether there had been "any substantial changes or modifications in the parking lot within the five years" prior to the accident. (Wasmer Dep. 24:10-24.) Of course, this testimony does not establish whether Kroger or Regency Partners performed the landscaping, or under what arrangement it was accomplished. There is no indication that Wasmer knew which entity did the landscaping.

Even if, when viewing the evidence in the light most favorable to Plaintiff, Wasmer's testimony shows that Kroger did the landscaping, a reasonable jury cannot conclude that by performing some landscaping of the parking lot, Kroger assumed the duty to keep the surfacing of the common street that ran in front of Kroger and other stores in good repair and free of hazards. A court has held that even the contribution of payment by commercial tenants to the fee of a custodial service to keep a shopping center common area clean was insufficient to establish that the tenants had assumed the duty of the shopping center owner to maintain the common area. *Putnam v. Sankar*, 34 Va. Cir. 40, 40-42 (Va. Cir. Ct. 1994).[2] The bare fact that some landscaping had been done is certainly less substantial than the contributions made in *Putnam*, and is insufficient as a matter of law to show assumption of the duty to maintain the common areas.

### B.

Plaintiff also claims that Kroger's provision of a two-tiered shopping cart was negligent because the cart by design was "inherently hazardous" for use on uneven pavement because of "its grocery-loaded high center-of-gravity." (Pl.'s Compl. ¶ 6.) The sole evidence of the defective condition of the cart provided by Plaintiff is Wasmer's own deposition testimony, in which she stated "that type of cart is very—it can be very top heavy, so trying to steer it you know, especially when you exit that store there is an angle, it's hard to steer at times with it being that top heavy and that short of a wheel base." (Wasmer Dep. 55:8-13.) Wasmer is not an expert on this topic, and no expert evidence has been supplied.

A business owes the duty to keep its premises in a reasonably safe condition and to warn its customers of any defect or unsafe condition that it knew about or should have known about.

---

[2] In *Putnam*, the lease specified that the owner had the duty to maintain the common area of the shopping center. *Id.* at 40-41. The custodial service was hired and supervised by a third party who was not the owner of the common area; the defendants had agreed to contribute to paying a portion of the custodial service fee. *Id.*

*Colonial Stores*, 203 Va. at 537, 125 S.E.2d at 190. Alternatively, to establish negligence under a products liability theory, a plaintiff must show "that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose," and "that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Garrett v. I.R. Witzer Co.*, 258 Va. 264, 267-68, 518 S.E.2d 635, 637 (1999). "A product is unreasonably dangerous if it is defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties." *Morgen Indus. v. Vaughan*, 252 Va. 60, 65, 471 S.E.2d 489, 492 (1996).

Plaintiff has failed to set out specific facts showing there is a genuine issue as to whether the two-tiered shopping carts were unsafe, defective, or unreasonably dangerous. Because a reasonable jury could not return a verdict for Plaintiff on the basis of the evidence offered, *Anderson*, 477 U.S. at 248, I hold that Defendants are entitled to judgment as a matter of law on the claim of negligent design.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgment. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 11th day of March, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE